UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| WILLIAM J. FORD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:16-CV-103 NAB |
| ) | |
| NANCY A. BERRYHILL[1], ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying William J. Ford's application for disability insurance benefits under the Social Security Act, 42 U.S.C. § 423 *et seq.* Ford alleged disability due to lyme disease, vision problems, exposure to Agent Orange, and heart problems. (Tr. 208.) The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Doc. 9.] The Court has reviewed the parties' briefs and the entire administrative record, including the hearing transcripts and the medical evidence. The Court heard oral argument in this matter on February 16, 2017. For the reasons set forth below, the Court will affirm the Commissioner's final decision.

---

[1]At the time this case was filed, Carolyn W. Colvin was the Acting Commissioner of Social Security. Nancy A. Berryhill became the Acting Commissioner of Social Security on January 20, 2017. When a public officer ceases to hold office while an action is pending, the officer's successor is automatically substituted as a party. Fed. R. Civ. P. 25(d). Later proceedings should be in the substituted party's name and the Court may order substitution at any time. *Id.* The Court will order the Clerk of Court to substitute Nancy A. Berryhill for Carolyn W. Colvin in this matter.

## I. Issues for Review

Ford asserts two issues for review. First, Ford states that the administrative law judge's (ALJ) finding of no severe mental impairment is not supported by substantial evidence. Second, Ford asserts that the ALJ's residual functional capacity (RFC) determination is arbitrary, unexplained, and unsupported by the record. The Commissioner contends that the ALJ's decision is supported by substantial evidence in the record and should be affirmed.

## II. Standard of Review

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The SSA uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled. 20 C.F.R. § 404.1520(a)(1). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities and meets the durational requirements of the Act. 20 C.F.R. § 404.1520(a)(4)(ii). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix to the applicable regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairments do not meet or equal a listed impairment, the SSA determines the claimant's RFC to perform past relevant work. 20 C.F.R. § 404.1520(e).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant meets this burden, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs in the national economy. *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000). If the claimant satisfies all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled. 20 C.F.R. § 404.1520(a)(4)(v).

The standard of review is narrow. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). This Court reviews decisions of the ALJ to determine whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find adequate support for the ALJ's decision. *Smith v. Shalala,* 31 F.3d 715, 717 (8th Cir. 1994). The court determines whether evidence is substantial by considering evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Cox v. Barnhart*, 471 F.3d 902, 906 (8th Cir. 2006). The Court may not reverse just because substantial evidence exists that would support a contrary outcome or because the Court would have decided the case differently. *Id.* To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole to consider:

> (1) The findings of credibility made by the ALJ;
>
> (2) The education, background, work history, and age of the claimant;
>
> (3) The medical evidence given by the claimant's treating physicians;
>
> (4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

>(5) The corroboration by third parties of the claimant's physical impairment;
>
>(6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and
>
>(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dept. of Health, Educ. & Welfare,* 623 F.2d 523, 527 (8th Cir. 1980).

## III. Discussion

Ford asserts that his onset date of disability is March 17, 2008. His last date of eligibility for disability insurance benefits was September 30, 2013. Because Ford's last date insured is September 30, 2013, Ford has the burden to show that he had a disabling impairment before his insured status expired. *See Barnett v. Shalala*, 996 F.2d 1221 (8th Cir. 1993) (*citing Basinger v. Heckler*, 725 F.2d 1166, 1168 (8th Cir. 1984)). "When an individual is no longer insured for Title II disability purposes, [the Court] will only consider [his] medical condition as of the date [he] was last insured." *Davidson v. Astrue,* 501 F.3d 987, 989 (8th Cir. 2007) "Evidence from outside the insured period can be used in helping to elucidate a medical condition during the time for which benefits may be rewarded." *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). But, the evidence from outside the period cannot serve as the only support for the disability claim. *Id.*

### A. Severe Impairments

Ford identified several problems with the ALJ's assessment at step two regarding his severe impairments. The ALJ found that Ford had the severe impairments of heart disease, degenerative disc disease, and left shoulder and elbow degenerative disc disease. (Tr. 22.) Ford contends that the ALJ failed to consider evidence of anxiety and depression prior to the date last insured and failed to find that these were severe impairments. Ford also contends that the ALJ

disregarded evidence of his post-traumatic stress disorder (PTSD) and personality disorder before the date last insured, merely because the evidence was generated after the date last insured.

After the ALJ has determined that a claimant is not engaged in substantial gainful activity, the ALJ then determines whether the claimant has a severe impairment or combination of impairments that has or is expected to last twelve months or will result in death. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(i)-(ii). A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by the claimant's statement of symptoms. 20 C.F.R. § 404.1508. To be considered severe, an impairment must *significantly* limit a claimant's ability to do basic work activities. *See* 20 C.F.R § 404.1520(c). "Step two [of the five-step] evaluation states that a claimant is not disabled if his impairments are not severe." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007) (citing *Simmons v. Massanari,* 264 F.3d 751, 754 (8th Cir. 2001)). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Id.* at 707. "If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two." *Id.* (citing *Page v. Astrue,* 484 F.3d 1040, 1043 (8th Cir. 2007)). "It is the claimant's burden to establish that his impairment or combination of impairments are severe. *Kirby*, 500 F.3d at 707 (citing *Mittlestedt v. Apfel,* 204 F.3d 847, 852 (8th Cir. 2000)). "Severity is not an onerous requirement for the claimant to meet, . . . but it is also not a toothless standard." *Kirby*, 500 F.3d at 708.

Ford's mental health treatment in the record is detailed as follows: Ford's treating primary care physician, Dr. Christopher Bowe first diagnosed Ford with anxiety in 2001 and

depression in 2005.  At various times during his treatment, Dr. Bowe prescribed Paxil, Xanax, and Alprazolam for Ford's anxiety and depression.  Dr. Bowe did not record the results of any mental status examinations if given, but he did record Ford's complaints of feeling "stressed," "anxious," and "depressed."  (Tr. 506-508, 509-11, 516-17, 523-26, 527-30, 536-39, 542-48, 550-559, 711-14, 724-29, 732-35, 740, 760-61, 769, 772, 774, 1526-28.)

On February 19, 2011, Ford visited clinical psychologist, Dr. Perris Monrow.  (Tr. 1706-1707.)  Ford stated that he had had previous counseling but it was not helpful.  (Tr. 1707.)  Ford stated that he had anxiety, stress, worry, fear, depression, bipolar, irritability, anger, violence, rage and eating, sleeping, marital, relational, legal/financial, and sexual problems often.  (Tr. 1707.)  Ford also reported having panic attacks and guilt sometimes.  (Tr. 1707.)

On May 19, 2014, Dr. Shannon Davis completed a Disability Benefits Questionnaire and Compensation and Pension Examination (C&P Exam) regarding Ford to determine eligibility for Veteran's Administration benefits.  (Tr. 1650-63.)  In her evaluation, Dr. Davis found that Ford's symptoms did not meet the diagnostic criteria for PTSD.  (Tr. 1651.)  She also found that he had an occupational or social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during periods of significant stress; or his symptoms are controlled by medication.  (Tr. 1652.)  Dr. Davis opined that while Ford identified various military stressors during his service, he did not identify sufficient symptoms of the remaining criteria to support a PTSD diagnosis.  (Tr. 1662.)  Dr. Davis did opine that Ford had narcissistic personality disorder. (Tr. 1651, 1662.)

On June 30, 2014, Dr. Mohinder Partap completed Ford's request for a second C&P Exam regarding whether Ford suffered from PTSD.  (Tr. 625-27.)  Dr. Partap noted that Ford reported visiting Dr. Partap once in 2008 for "multiple vague somatic complaints and loss of

6

memory after losing his job." (Tr. 625). Dr. Partap noted that Ford never returned with his wife to verify his history of bipolar disorder and anemia. (Tr. 625.) Ford's mental status examination was within normal limits. (Tr. 625) Dr. Ford diagnosed Ford with personality disorder, not otherwise specified. (Tr. 626.)

On March 13, 2015, Dr. Monrow evaluated Ford for PTSD in a Disability Benefits Questionnaire. (Tr. 1644-49.) Dr. Monrow wrote on the form that Ford had previously been diagnosed with PTSD[2]. Dr. Monrow opined that Ford had occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking and/or mood. (Tr. 1645.) Dr. Monrow found that Ford met all of the required criteria for a PTSD diagnosis. (Tr. 1647-48.) Dr. Monrow found that Ford had recurrent distressing dreams and recollections, difficulty concentrating, panic attacks, flattened affect, impaired judgment and abstract thinking, memory loss, chronic sleep impairment, impaired impulse control, persistent delusions or hallucinations, persistent danger of hurting self or others, neglect of personal appearance and hygiene, and disorientation to time and place among many other symptoms. (Tr. 1647-48).

Finally, on June 15, 2015, Dr. Monrow completed a psychological opinion and diagnosed Ford with PTSD, anxiety disorder, and mood disorder. (Tr. 2236.) Dr. Monrow opined that Ford's conditions have placed "a heavy mental impairment" on him and he is "totally incapable to maintain any employment at this time, or very likely any time in the future." (Tr. 2236.) Dr. Monrow further opined that "Ford suffers greatly from stress anxiety, panic attacks, depression, insomnia, night sweats, loss of sleep, is mentally tired and fatigued." (Tr. 2236.) Dr. Monrow then stated that Ford would likely need to maintain some regimen of psychotropic medications as well as continue regularly scheduled psychotherapy well into the future.

---

[2] The administrative record does not indicate a previous diagnosis of PTSD.

In his opinion, the ALJ found that Ford's PTSD and personality disorder were not medically determinable impairments. (Tr. 23.) The ALJ stated the following:

> In February 2011, the claimant sought counseling for PTSD, but was not diagnosed with PTSD. The claimant was assessed with a personality disorder in June 2014, but was never diagnosed with a personality disorder prior to his date last insured. The claimant was diagnosed with PTSD in March 2015, after his date last insured, but had not been diagnosed with PTSD, or had any consistent treatment for PTSD up to that point. Therefore, the claimant's PTSD and personality disorder are not medically determinable impairments.

(Tr. 23.) (internal citations omitted).

Ford contends that the ALJ erred by failing to consider evidence of his anxiety and depression prior to the date last insured and in failing to find that he had a severe mental impairment. The Court finds that the ALJ did not err in evaluating Ford's mental health. Although the ALJ did not specifically mention Ford's diagnoses of anxiety and depression, the ALJ did cite to evidence that mentions those diagnoses. Therefore, it is assumed that the ALJ considered those diagnoses. *See e.g. Wright v. Astrue*, 489 Fed. Appx 147, 149 (8th Cir. 2012) (citing *Bradley v. Astrue*, 528 F.3d 1113, 1115-1116 n.3 (8th Cir. 2008) (GAF scores)).

Next, the evidence regarding Ford's diagnoses of anxiety and depression do not support a finding of a severe impairment. During the time of Ford's treatment with Dr. Bowe, the record indicates that these conditions were stable and well-controlled by medication. There is no evidence that Ford's anxiety and depression significantly limited his physical or mental ability to do basic work activities. *See* 20 C.F.R § 404.1520(c). Ford did not carry his burden to establish that his anxiety and depression were severe impairments.

Then, the ALJ did not err in finding that Ford had not met his burden to demonstrate that his PTSD and personality disorder were severe impairments before his date last insured. Before

8

the expiration of the date last insured, there is no medical evidence in the record to support that Ford suffered from PTSD or a personality disorder. Ford produced evidence of one mental health appointment during the time period (Tr. 1707). The other objective medical records do not indicate any symptoms or objective medical findings to support a PTSD or personality disorder diagnosis during the relevant time period. As stated earlier, evidence from outside the period cannot serve as the only support for the disability claim. *Cox*, 471 F.3d at 907. In this case, the only evidence supporting Ford's claim for PTSD and personality disorder are past the date last insured.

### B. Memory Testing

Next, Ford asserts that the ALJ failed to develop the record and should have obtained evidence of memory testing and elicited testimony from a medical expert regarding the onset date and functional limitations of Ford's mental health conditions. The ALJ has a duty to fully develop the record. *Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006). In some cases, this duty requires the ALJ to obtain additional medical evidence, such as a consultative examination of the claimant, before rendering a decision. *See* 20 C.F.R. § 404.1519a(b). "There is no bright line test for determining when the [Commissioner] has failed to develop the record. The determination in each case must be made on a case by case basis." *Battles v. Shalala*, 36 F.3d 43, 45 (8th Cir. 1994). A claimant for social security disability benefits has the responsibility to provide medical evidence demonstrating the existence of an impairment and its severity during the period of disability and how the impairment affects the claimant's functioning. 20 C.F.R. § 404.1512.

"The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is

disabled." *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011) (citing *Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986)). Therefore, "[a]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995).

In this case, Ford mentioned to his doctors that he had memory problems, trouble concentrating, and confusion in 2008 and 2009. (Tr. 553, 642, 724, 726.) On at least one occasion, Dr. Bowe notes that two neurologists had recommended memory testing. (Tr. 558.) The parties agree that there is no evidence of memory testing in the record. While Ford contends that the ALJ should have ordered additional testing on this basis, there is no evidence that Ford experienced ongoing memory problems. None of his doctors diagnosed him with a memory impairment. Therefore, the Court finds that the ALJ did not err in failing to order additional memory testing.

### C. RFC Determination

In his second issue for review, Ford contends that the ALJ's RFC determination is not supported by substantial evidence in the record as a whole, because the ALJ's finding is arbitrary, unexplained, and unsupported by the administrative record.

The ALJ found that Ford had the RFC to perform medium work[3] with the following limitations: sit, stand, or walk for six hours out of an eight hour day; a sit/stand option where he sits for five minutes at a time or stands for 30 minutes at a time before changing positions without any time off task or loss of productivity; walk up to 300 yards without an assistive device and without rest; frequently reach overhead with left arm, climb ramps and stairs, balance and stoop; never climb ladders, ropes, or scaffolds, crouch, or crawl; can occasionally kneel and

---

[3] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. 29 U.S.C. § 404.1567(c).

bend; avoid concentrated exposure to chemicals, fumes, dust, dander, and mold; must avoid all extreme temperatures; can perform simple repetitive tasks with allowance for being three percent off task during the workday with a three percent loss of productivity. (Tr. 24-25.)

The RFC is defined as what the claimant can do despite his or her limitations, and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(a). The RFC is a function-by-function assessment of an individual's ability to do work related activities on a regular and continuing basis.[4] SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). It is the ALJ's responsibility to determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and the claimant's own descriptions of his limitations. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). An RFC determination made by an ALJ will be upheld if it is supported by substantial evidence in the record. *See Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). "[T]he ALJ is not qualified to give a medical opinion but may rely on medical evidence in the record." *Wilcockson v. Astrue*, 540 F.3d 878, 881 (8th Cir. 2008). In making a disability determination, the ALJ shall "always consider the medical opinions in the case record together with the rest of the relevant evidence in the record." 20 C.F.R. § 404.1527(b); *see also Heino v. Astrue*, 578 F.3d 873, 879 (8th Cir. 2009).

Based on a careful review of the evidence in the record as a whole, the Court finds that the ALJ's RFC determination is supported by substantial evidence in the record as a whole. A review of the record as a whole demonstrates that Ford has some restrictions in his functioning and ability to perform work related activities, however, he did not carry his burden to prove a more restrictive RFC determination. *See Pearsall*, 274 F.3d at 1217 (it is the claimant's burden,

---

[4] A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. SSR 96-8p, 1996 WL 374184, at *1.

not the Social Security Commissioner's burden, to prove the claimant's RFC). The Court may only "disturb" the ALJ's decision if it is outside the available zone of choice. *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015). "An ALJ's decision is not outside the zone of choice simply because [the Court] might have reached a different conclusion had [it] been the initial fact finder." *Id.* Based on the foregoing, the Court finds that the ALJ's RFC determination finds substantial support in the record.

**IV. Conclusion**

For reasons set forth above, the Court affirms the Commissioner's final decision.

Accordingly,

**IT IS HEREBY ORDERED** that the relief requested in Plaintiff's Complaint and Brief in Support of Complaint is **DENIED**. [Docs. 1, 14, 23.]

**IT IS FURTHER ORDERED** that the Court will enter a judgment in favor of the Commissioner affirming the decision of the administrative law judge.

**IT IS FURTHER ORDERED** that the Clerk of Court shall substitute Nancy A. Berryhill for Carolyn W. Colvin in the court record of this case.

Dated this 22nd day of February, 2017.

    /s/ Nannette A. Baker
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE